*153 OPINION.
Teammell:
The petitions in these proceedings allege that the respondent in determining the deficiencies involved herein erred: (1) In arriving at the value on March 1, 1913, of the stock of the petitioners in Lambrecht, Kelly & Co. by greatly undervaluing such stock; (2) in holding the value of the stock received by the petitioners in 1919 from the Michigan Investment Co. of Delaware to be equal to the par value of the stock received, thereby greatly overvaluing the stock; (3) in treating the transfer in 1919 of petitioner’s interests in Lambrecht, Kelly & Co. to the Michigan Investment Co. of Delaware in exchange for stock in the latter company as involving taxable income. - .
The respondent denies that any error was committed in the determination of the deficiencies.
At the hearing the petitioners were permitted to amend their petitions by alleging that, if it is found that they received as a liquidating dividend the assets of Lambrecht, Kelly & Co. that were transferred to the Michigan Investment Co. of Delaware for stock in that company received by the petitioners, the respondent erred in subjecting such dividend to both normal tax and surtax.
Inasmuch as there were no sales of the stock of Lambrecht, Kelly & Co. on or about March 1, 1913, we will examine into the value of the assets and business of that company in order to ascertain if possible what was the fair market value of the stock of the petitioners *154 on that date. Both the petitioner and the respondent used this method in determining the value of this stock. With respect to the fair market value on March 1, 1913, of the business of Lambreeht, Kelly & Co., Paul A. Sarge testified that he had been an employee of Lambreeht, Kelly & Co. from about 1907 to 1911, at which time he became connected with another firm in Detroit. He is and for four or five years has been a member of the appraisals committee of the Detroit Real Estate Board. He has had wide experience in valuing real estate. He testified that the value of the company’s good will alone on March 1, 1913, was at least $100,000, and that if he could have bought the business he would have paid from $125,000 to $150,000 for it. Claude M. Harmon, who has been in the real estate business in Detroit since 1894 and is a member of the appraisals committee of the Detroit Real Estate Board, of which committee he has been chairman several times, and who has had considerable experience in the brokerage business in real estate, testified that the business, including tangible and intangible assets, had a value at March 1, 1913, of from $125,000 to $150,000.
In view of the standing of Lambreeht, Kelly & Co. on March 1, 1913, its clientele, which included a number of people of considerable means, its previous earnings and the activity in real estate in Detroit as a result of the continued increase in population annually, and other evidence, we are of the opinion that the business had a fair market value of $125,000 on March 1, 1913. Since the business had a value of $125,000 on that date, in our opinion the stock which represented the ownership of the business had the same fair market value. The fair market value on March 1, 1913, of the stock owned by the petitioners in Lambreeht, Kelly & Co. was as follows:
Daniel Kelly_$38, 500
Richard G. Lambreeht_'_ 38, 000
Gustav Dietrich- 38, 000
The respondent determined that the petitioners received taxable gain when they received the assets of Lambreeht, Kelly & Co. on the dissolution of that corporation, but used as a basis of determining the gain the market value of the stock of the Michigan Investment Co. of Delaware, which he considered to be the par value.
The petitioner, on the other hand, contends that the receipt by the petitioners of the assets of the old corporation on its dissolution and the transfer by them to the new corporation was all part of a single transaction; that in effect the petitioners exchanged their stock in Lambreeht, Kelly & Co. for stock in the Michigan Investment Co. of Delaware; that the petitioners acted merely as a conduit by which the assets of the old corporation were turned over to the new and that the transaction resulted in no taxable gain because the stock of *155 the new corporation had no fair market value when it was received by the petitioners.
In our view of the case it is not necessary for us to determine whether the receipt of the assets of the old corporation by the petitioner and the transfer to the new corporation for stock was in effect one transaction, or whether the receipt of the assets in liquidation of the old company is a separate transaction and the transfer thereof for stock another transaction. The effect in so far as this case is concerned, is the same.
We found, from the evidence, that the stock of the new corporation had a market value. The assets which came to the petitioners were exchanged, to all practical purposes, simultaneously for stock. The value of what was received for the assets under the circumstances here represents the market value of the assets. Then it becomes immaterial whether we hold that the gain is the difference between the March 1, 1913, value of the stock of the old corporation (that value being greater than cost) and the value of the assets of that corporation distributed to the petitioners, or the value of the stock of the new corporation for which it was immediately exchanged.
The respondent determined the fair market value of the assets and the fair market value of the stock of the new company to be the same, but held that the stock of the new company was worth par. From a consideration of all the evidence we think that the respondent erred in that respect. In our opinion the stock of the Delaware corporation was not worth par when received by the petitioners. The authorized capital stock of the Michigan Investment Co. of Delaware was $5,000,000 of the par value of $10 per share. All of this stock, except 63,150 shares, was turned over to the Aetna Finance Corporation in order to sell to the public. There was then considerable high-pressure selling. Subscriptions were taken in small blocks by the activity and personal solicitation of salesmen located in different parts of the country and Canada. They worked on it for a year and finally gave it up. Altogether they sold 149,001 shares. A large portion was sold on the installment basis. Much of it was not paid for, and many of the subscriptions were canceled. We do not consider that sales of stock made under the circumstances under which this was sold is an indication of the market value of stock. See Appeal of Fruen Investment Co., 2 B. T. A. 542.
William C. Honey, a broker and dealer in stocks and bonds, both listed and unlisted, who was familiar with stock market conditions in 1919 and who was also familiar with the stock of the Michigan Investment Co. of Delaware, testified that in his opinion the block of stock received by the petitioners had in 1919 a maximum fair *156 market value of $5 per share. Sheldon R. Noble, a member of a partnership with which he has been associated for 13 years and which is engaged in underwriting and distributing stock issues and in doing a general brokerage business, and who was also familiar with stock market conditions in 1919, testified that in his opinion the stock received by the petitioner could have been sold in that year at a price not in excess of 50 per cent of its par value.
The Michigan Investment Co. of Delaware, in entering the assets formerly belonging to Lambrecht, Kelly & Co. on its books, assigned to such assets greater values than previously assigned to them on the books of Lambrecht, Kelly & Co., and in some instances amounts in excess of their, fair market value. During 1919 the real estate business in Detroit was in a depressed condition due to the fact that the city’s population was decreasing at the rate of 50,000 persons per year and that the money market was very stringent in that year. From a consideration of all the evidence, we think that the net amount of 43,750 shares of stock in the Michigan Investment Co. of Delaware, received by the stockholders in Lambrecht, Kelly & Co. for their interests in that company, had a fair market value of $218,-750, or $5 per share. The fair market value of the net amount of stock received by each of the petitioners was as follows:
Daniel Kelly_$67, 375
Richard G. Lambrecht- 66, 500
Gustav Dietrich- 66, 500
Under the provisions of section 202 of the Revenue Act of 1918, the basis for determining the profit from the exchange of property acquired prior to March 1, 1913, is the cost of such property or its fair market price or value on March 1, 1913, whichever is greater, and where property is received in exchange for other property the property received is to be treated as the equivalent of cash to the amount of its fair market value, if any. Under the Revenue Act of 1918 assets of a corporation distributed in kind in liquidation are considered as having been received in exchange for the stock, and the gain is subject to the normal as well as to the surtax. The situation here presented is different from the facts in the case of Hellmich v. Hellman, 18 Fed. (2d) 239, wherein the Circuit Court of Appeals for the Eighth Circuit held that a distribution of earnmgs and ‘profits accumulated since February 28, 1913, in liquidation was not subject to the normal tax. In this case it is not shown that earnings and profits were distributed, but the assets were distributed in kind. Any increase in value is not shown to have been realized by sale or other disposition by the corporation. If the assets distributed consisted in part of accumulated earnings and profits, the evidence does not disclose it. A balance sheet as of June 30, 1919, was introduced in evi *157 dence. It showed a net worth as per books of $149,755.07, but this in and of itself is not sufficient evidence that there were any undistributed profits on hand. It might have represented an unearned increment or increase in asset values unrealized by sale or other disposition or mere write up of values.
The tax liability would then be the saíne whether we hold that the transaction amounted to a liquidation dividend or an exchange of stock for stock.
The respondent determined the deficiency on the basis of the March 1, 1913, value. It was not contended that this was erroneous in principle, and in the absence of any issue on that point we assume that the respondent followed the law and that the cost did not exceed the March 1, 1913, value. Audubon Park Realty Co., 6 B. T. A. 875. While there is no evidence directed specifically to the question, the evidence taken as a whole shows that there was an increase in value of the stock from the organization of the corporation up to March 1, 1913, and we are convinced that the cost was less than the March 1, 1913, value. To the extent that the fair market value of the stock of the Michigan Investment Co. of Delaware at the time of its receipt by the petitioners in 1919 in exchange for their respective interests in Lambrecht, Kelly & Co. exceeds the fair market value of their stock in the latter company on March 1, 1913, we think the petitioners received taxable income in 1919.

Judgment will be entered on 15 days’ notice, wider Rule 50.